IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RAHEEM JEFFERSON BRENNERMAN and BLACKSANDS PACIFIC ENERGY CORPORATION, INC.,<br><br>    Plaintiffs,<br><br>— vs. —<br><br>GUARDIAN NEWS & MEDIA LIMITED, GUARDIAN NEWS & MEDIA, LLC, and CENTER FOR PUBLIC INTEGRITY d/b/a *International Consortium of Investigative Journalists*,<br><br>    Defendants. | Civil Action No. 14-cv-188 (SLR)<br><br>**Demand for Jury Trial** |

## FIRST AMENDED COMPLAINT

Plaintiffs Raheem Jefferson Brennerman and Blacksands Pacific Energy Corporation, Inc. ("Blacksands Pacific"), by and through their attorneys, assert the following first amended complaint for defamation against Defendants Guardian News & Media Limited and Guardian News & Media, LLC (collectively, "The Guardian") and Center for Public Integrity d/b/a *International Consortium of Investigative Journalists* ("ICIJ").

## SUMMARY OF ACTION

1.    On November 26, 2012, ICIJ published false and defamatory statements about Mr. Brennerman and Blacksands Pacific in an article entitled *Who's Buying Britain? Probe Reveals Real Estate Speculators Hidden By Offshore Alchemy*.[1] That same day, The Guardian published similar false and defamatory statements in an article entitled *How secret offshore*

---

[1] David Leigh, Harold Frayman and James Ball, *Who's Buying Britain? Probe Reveals Real Estate Speculators Hidden By Offshore Alchemy*, ICIJ (Nov. 26, 2012), *available at*, www.icij.org/offshore/secret-london-real-estate-speculators (Ex. 1.)

firms feed London's property boom,[2] and in an article entitled *Revealed: the real identities behind Britain's secret property deals*.[3]   The articles defame and disparage the Plaintiffs by falsely accusing Mr. Brennerman of exploiting offshore entities and a trust to conceal his ownership in — and to avoid paying taxes on — real estate in Grosvenor Crescent and Knightsbridge.   Defendants' articles also falsely accuse Mr. Brennerman of fleeing to New York to avoid repaying a £118 million loan from the Royal Bank of Scotland ("RBS").

2.   In truth, Icelandic investors — not Mr. Brennerman — owned the property in question, having purchased it in 2007 through a company capitalized with their own equity investments and bank loans.   The Icelandic investors hired Mr. Brennerman's company to develop and market the property.   Mr. Brennerman never had any profit-sharing or ownership interest, direct or indirect, in the property.   Mr. Brennerman was neither the settlor, trustee, nor the beneficiary of the trust referenced in Defendants' articles.   Nor did Mr. Brennerman ever borrow money to finance the development of the property.   Rather, those loans were made to the Icelandic investors' company — not Mr. Brennerman or his company.   Not surprisingly, RBS did not pursue Mr. Brennerman to recover funds it had never loaned to him, and Mr. Brennerman never fled the United Kingdom to avoid a loan recovery action by RBS that never occurred.

3.   In authoring and publishing the defamatory articles, the Defendants acted with actual malice, deliberately ignoring documents and information which show that their statements about Plaintiffs are false.   For example, they ignored publicly-available information

---

[2] David Leigh, Harold Frayman and James Ball, *How secret offshore firms feed London's property boom*, The Guardian (Nov. 26, 2012), *available at*, http://www.theguardian.com/uk/2012/nov/26/secret-offshore-firms-fuel-london-property (Ex. 2).

[3] David Leigh, Harold Frayman and James Ball, *Revealed: the real identities behind Britain's secret property deals*, The Guardian (Nov. 26, 2012), *available at*, www.theguardian.com/uk/2012/nov/26/indentities-behind-secret-property-deals (Ex. 3).

explaining that the property was owned by Icelandic investors. They also disregarded financial documents and records in their possession prior to publication, which showed clearly and unequivocally that the accusations in their articles are false. Finally, Defendants have failed to correct or retract the damaging falsehoods. To this day, Defendants' false and defamatory statements remain available to a worldwide internet audience on Defendants' websites.

4.      Other websites have republished the defamatory articles, spreading the falsehoods to an even broader audience and compounding the damage and reputational harm to Mr. Brennerman and Blacksands Pacific. In addition to the substantial reputational harm caused by the false allegations in the defamatory articles, Mr. Brennerman and Blacksands Pacific have been damaged in that they have been forced to expend substantial resources to respond to the false statements in the articles.

5.      By falsely accusing Mr. Brennerman of abusing offshore entities to wrongfully conceal his business activities, defaulting on loans, and fleeing creditors, Defendants have suggested that Mr. Brennerman is nothing more than a dishonest criminal unfit for his profession and business, and that Blacksands Pacific is a sham organization set up by Mr. Brennerman to further unlawful and shadowy business activities. Mr. Brennerman and Blacksands Pacific have worked hard and with great diligence to establish their reputations for integrity, honesty, and ingenuity in real estate and energy business operations. Accordingly, Plaintiffs bring this defamation action to vindicate their rights and reputations under civil law, and to recover damages from Defendants to compensate for the reputational and economic harm they have suffered as a result of the defamatory articles. Plaintiffs also seek punitive damages as a result of Defendants' knowing and malicious publication of defamatory falsehoods.

3

## THE PARTIES AND OTHER RELEVANT PERSONS

6.      Plaintiff Raheem Jefferson Brennerman is a resident of Nevada and a dual citizen of the United States and the United Kingdom.  Mr. Brennerman began his career as an investment banker and working in his family's real estate and energy businesses in New York, London, and Luzern, Switzerland.  In 2004, Mr. Brennerman founded his own business, now called BLV Group Corporation, LLC ("BLV Group"), a Delaware limited liability company, which specializes in real estate investing, management and development, advisory, hospitality, lifestyle development, and philanthropy.

7.      Plaintiff Blacksands Pacific Energy Corporation, Inc. ("Blacksands Pacific") is a Delaware corporation with its principal place of business in Los Angeles, California. Brennerman co-founded Blacksands Pacific in 2010, and serves as its chairman, president, and CEO.  Blacksands Pacific explores, produces, and distributes natural gas and crude oil, and specializes in marketing and trading of crude oil and petroleum products.

8.      Defendant Center for Public Integrity is a District of Columbia corporation with its principal place of business in Washington, D.C.  The Center for Public Integrity does business as the International Consortium of Investigative Journalists ("ICIJ") and published a false and defamatory article on November 26, 2012, entitled *Who's Buying Britain? Probe Reveals Real Estate Speculators Hidden By Offshore Alchemy*.  (Ex. 1.)

9.      Defendant Guardian News & Media Limited is an affiliate of Defendant Guardian News & Media, LLC, which is a Delaware limited liability company.  Upon information and belief, Guardian News & Media Limited and Guardian News & Media, LLC (collectively, "The Guardian") publish *The Guardian* newspaper and www.theguardian.com. On November 26, 2012, The Guardian published two false and defamatory articles: *How secret*

*offshore firms feed London's property boom* (Ex. 2), and *Revealed: the real identities behind Britain's secret property deals* (Ex. 3).

## JURISDICTION

10.     This case involves damages to Plaintiffs' businesses in excess of $1,000,000.

11.     This Court has personal jurisdiction over the Guardian News & Media, LLC because it is a Delaware limited liability company.

12.     This Court has personal jurisdiction over Guardian News & Media Limited under Delaware Code § 3104 because Guardian News & Media Limited published false and defamatory statements regarding Plaintiffs online to readers in Delaware, damaging Plaintiffs' reputations in Delaware, and because Guardian News & Media Limited regularly transacts business in Delaware by collaborating with a Delaware affiliate to publish articles and advertising online to readers in Delaware, thereby deriving substantial revenue from services or things used or consumed in Delaware. Guardian News & Media Limited specifically targets readers in Delaware by covering news in Delaware and organizing such content under a "Delaware" tag on its website at www.theguardian.com/world/delaware. In addition, Guardian News & Media Limited's harm to Plaintiffs has been particularly acute in Delaware because Blacksands Pacific is a Delaware corporation and Mr. Brennerman is a principal in Delaware companies, including Blacksands Pacific.

13.     This Court has personal jurisdiction over ICIJ under Delaware Code § 3104 because ICIJ published false and defamatory statements regarding Plaintiffs online to readers in Delaware, damaging Plaintiffs' reputations in Delaware, and because ICIJ regularly transacts business in Delaware by publishing articles and advertising online to readers in Delaware, thereby deriving substantial revenue from services or things used or consumed in Delaware. In addition, Defendants' harm to Plaintiffs has been particularly acute in Delaware

because Blacksands Pacific is a Delaware corporation and Mr. Brennerman is a principal in Delaware companies, including Blacksands Pacific.

14.     Jurisdiction and venue are also proper in Delaware because the state has a strong public interest in protecting the individuals who establish and serve as officers and directors of Delaware companies from the publication of defamatory falsehoods.

## FACTUAL BACKGROUND

### The Defendants Publish False And Defamatory Statements About Plaintiffs Online

15.     On November 26, 2012, the Defendants published articles that made false and defamatory allegations of illegal and improper conduct by the Plaintiffs.   These articles, published to a worldwide internet audience by the Defendants damaged and defamed the Plaintiffs.

16.     ICIJ published the defamatory statements on its website in an article entitled *Who's Buying Britain? Probe Reveals Real Estate Speculators Hidden By Offshore Alchemy* (Ex. 1), and The Guardian published the defamatory statements in an article entitled *How secret offshore firms feed London's property boom* (Ex. 2).  Both articles contain the following false and defamatory statements regarding the Plaintiffs:

> Huge loans were made by the RBS bank in 2007 to a slew of offshore companies controlled by a 29-year-old Nigerian living in London, Ayodeji Soetan, also known as Raheem Brennerman and Jefferson Brennerman.

> With £118m from RBS and a further £18m from HBOS, he bought property in Knightsbridge and the former Red Cross offices in Grosvenor Crescent....

> We discovered that all the BVI companies trace further back to an entity called Nuevitas registered in the tiny Indian Ocean jurisdiction of the Seychelles. Nuevitas in turn controlled an offshore trust called Trigon, of which Soetan was the beneficiary.

> When his dreams of a tax-free property fortune stalled in 2009
> with receivers being called in, Soetan moved to New York, where
> he now says he heads an oil exploration and energy trader firm
> called Blacksands Pacific Inc.

17.     Also on November 26, 2012, The Guardian published on its website an

additional article entitled *Revealed: the real identities behind Britain's secret property deals.*

(Ex. 3.) That article contains the following false and defamatory statements:

> The owners of BVI entities use them to hide their dealings in UK
> property and to take advantage of <u>tax</u> loopholes....
>
> Owners identified by the Guardian on Monday include:
>
> ...
>
> Raheem Brennerman, a 29-year-old of Nigerian extraction, who
> borrowed £118m from the Royal Bank of Scotland.

18.     The statements published by the Defendants in the three articles are

demonstrably false. As an initial matter, Mr. Brennerman does not use aliases to conceal his

business dealings as the Defendants falsely state. Mr. Brennerman has never used the name

"Ayodeji." "Soe-tan" is Mr. Brennerman's step-father's surname. But Mr. Brennerman

conducts business, in all jurisdictions, under his legal name "Brennerman." The Defendants'

false statement that Mr. Brennerman's "real" name is "Ayodeji Soetan," and that he uses the

name "Brennerman" to conceal his true identity, is a transparent attempt to sensationalize their

reporting and create the false impression that Mr. Brennerman's routine business transactions

are shady and improper, by appealing to xenophobic anti-Nigerian prejudice.

19.     Contrary to the statements in the articles, Mr. Brennerman did not "control" a

slew of offshore companies that received loans from RBS. Nor did Mr. Brennerman borrow

£118 million from RBS to buy property in Knightsbridge and Grosvenor Crescent. The

company that borrowed money from RBS to purchase those properties was owned and

controlled by Icelandic investors — not Mr. Brennerman.[4]  Mr. Brennerman was never an owner, either directly or indirectly, of the properties.  Nor was Mr. Brennerman ever a beneficiary of the Trigon Trust.  As such, it was false and defamatory for the Defendants to accuse him of being an "owner[] of BVI entities use[d] to hide [his] dealings in UK property and to take advantage of <u>tax</u> loopholes" and to accuse Mr. Brennerman, using the alleged alias "Soetan," of being the "beneficiary" of the Trigon Trust, an offshore entity allegedly established and used to collect profits and evade taxes from shady real estate schemes.

20.     Similarly, it was false and defamatory for the Defendants to state that, "[w]hen his dreams of a tax-free property fortune stalled in 2009 with receivers being called in, Soetan moved to New York, where he now says he heads an oil exploration and energy trader firm called Blacksands Pacific Inc."  This statement was intended to, and does in fact, give readers the false impression that Mr. Brennerman was the principal in the real estate developments referenced in the articles, that he personally borrowed money from RBS, that he personally defaulted on the RBS loan, that he was pursued by RBS for repayment of the loan, and that he fled to New York to avoid repayment of the RBS loan.  These statements further were intended to, and do in fact, give readers the false impression that Blacksands Pacific is a sham company, established by a dishonest deadbeat to cover his tracks after disregarding financial commitments in the United Kingdom.

21.     These statements are demonstrably false.  Mr. Brennerman was a fee-for-service contractor in the real estate transactions described in the articles, not a principal with "dreams of a tax-free property fortune."  He never borrowed money from RBS for the Grosvenor Crescent or Knightsbridge real estate developments and he was never pursued by RBS for

---

[4] Indeed, the ICIJ & Guardian Defendants did not even accurately report the amount of the loan that the Icelandic investors' company borrowed from RBS.

repayment of a loan that was never made to him. Needless to say, therefore, Mr. Brennerman did not flee to New York to avoid repaying money that he had never borrowed. Mr. Brennerman moved back to New York in 2011 — not 2009 as The Defendants asserted — for personal and business reasons having nothing to do with the RBS loan. Mr. Brennerman was not even a resident of the United Kingdom in 2009 or prior to 2009. And, contrary to the false implications in the Defendants' articles, Blacksands Pacific is not some subterfuge used by Mr. Brennerman to cover his tracks from the real estate transactions and defaulted loans. Rather, Blacksands Pacific is a legitimate oil and natural gas exploration company, incorporated by Mr. Brennerman in Delaware in 2010, to pursue business activities in the energy sector wholly unrelated to the subjects of the articles.

### The Defendants Recklessly Disregarded The Truth By Deliberately Ignoring Information That Rebutted The Falsehoods In Their Articles

22.     In publishing the false and defamatory statements described above, Defendants acted with actual malice. Defendants either knew or should have known that their statements were false, or they acted in reckless disregard of the truth or falsity of those statements, by ignoring information and documentation in their possession rebutting the false statements in the articles.

23.     Upon information and belief, prior to publication of the defamatory statements, Defendants reviewed — but deliberately ignored — financial documents which directly refute the false assertions in their articles. The documents expressly refute Defendant's false statements. For example, corporate records for the company which owned the real estate in question show that its owners were Icelandic investors, not Mr. Brennerman. And while Defendants falsely state that Mr. Brennerman was the beneficiary of the Trigon Trust, the trust documents show clearly that Mr. Brennerman was not the beneficiary.

24.     Defendants recklessly disregarded readily available public information confirming that the real estate in question was owned by Icelandic investors who appointed a subsidiary of Mr. Brennerman's BLV Group as the development manager.    Years before Defendants published their false and defamatory statements, numerous media outlets correctly reported these facts.    *See* Anna Hodgekiss, *Icelandic company buys in Belgravia*, PropertyWeek.com, Jun. 14, 2007, *available at,* http://www.propertyweek.com/news/icelandic-company-buys-in-belgravia/3089320.article (Ex. 4); Jonathan Sibun, *Zegna collapse leaves swish digs up for grabs*, The Telegraph, Jul. 18, 2009 (Ex. 5), available at, http://www.telegraph.co.uk/finance/comment/citydiary/5857541/Zegna-collapse-leaves-swish-digs-up-for-grabs.html ("Zegna III Holdings, the owners of 3-10 Grosvenor Crescent…Zegna's backers?  Icelandic."); *BLV high court bid for reinstatement fails*, Estates Gazette, Nov. 28, 2009 (Ex. 6) ("BLV was appointed development manager by owning company Zegna III in 2007.").

25.     Even after being informed of Plaintiffs' intention to file this lawsuit based on the false statements in its article, ICIJ has refused to correct or retract the damaging falsehoods.

## COUNT I: DEFAMATION

26.     Plaintiffs incorporate each of the foregoing paragraphs as if fully set forth herein.

27.     On November 26, 2012, the Defendants published articles that made false and defamatory allegations of illegal and improper conduct on the part of Mr. Brennerman and Blacksands Pacific.  These articles damaged and defamed the Plaintiffs.

28.     ICIJ published the defamatory statements on its website in an article entitled *Who's Buying Britain? Probe Reveals Real Estate Speculators Hidden By Offshore Alchemy* (Ex. 1), and The Guardian published the defamatory statements in an article entitled *How*

*secret offshore firms feed London's property boom* (Ex. 2).  Both articles contain the following

false and defamatory statements regarding the Plaintiffs:

> Huge loans were made by the RBS bank in 2007 to a slew of offshore companies controlled by a 29-year-old Nigerian living in London, Ayodeji Soetan, also known as Raheem Brennerman and Jefferson Brennerman.
>
> With £118m from RBS and a further £18m from HBOS, he bought property in Knightsbridge and the former Red Cross offices in Grosvenor Crescent....
>
> We discovered that all the BVI companies trace further back to an entity called Nuevitas registered in the tiny Indian Ocean jurisdiction of the Seychelles. Nuevitas in turn controlled an offshore trust called Trigon, of which Soetan was the beneficiary.
>
> When his dreams of a tax-free property fortune stalled in 2009 with receivers being called in, Soetan moved to New York, where he now says he heads an oil exploration and energy trader firm called Blacksands Pacific Inc.

29.     Also on November 26, 2012, The Guardian published on its website an

additional article entitled *Revealed: the real identities behind Britain's secret property deals.*

(Ex. 3.)  That article contains the following false and defamatory statements:

> The owners of BVI entities use them to hide their dealings in UK property and to take advantage of <u>tax</u> loopholes....
>
> Owners identified by the Guardian on Monday include:
>
> ...
>
> Raheem Brennerman, a 29-year-old of Nigerian extraction, who borrowed £118m from the Royal Bank of Scotland.

30.     In the articles, The Defendants published false and defamatory statements that

were reasonably understood by those who read them to be statements of fact regarding Mr.

Brennerman's alleged ownership in, and loans to finance the development of, the Grosvenor

Crescent and Knightsbridge properties, as well as Mr. Brennerman's alleged efforts to conceal

his identity, evade taxes, and flee defaulted financial obligations incurred in connection with

11

the scheme, and Blacksands Pacific's alleged purpose as a sham company and subterfuge used by Mr. Brennerman to cover his tracks from the real estate transactions and defaulted loans referenced the articles.

31.     Specifically, the Defendants published false statements that Mr. Brennerman "controlled" "a slew of offshore companies" that took "[h]uge loans" from RBS in 2007, with which "he bought property in Knightsbridge and the former Red Cross offices in Grosvenor Crescent." (Ex. 1, Ex. 2.) The Defendants also published false statements that Mr. Brennerman "was the beneficiary" of the Trigon Trust, to which "all the BVI companies" allegedly "controlled" by Mr. Brennerman could be "trace[d] back." (*Id.*) The Defendants also falsely stated that, "[w]hen his dreams of a tax-free property fortune stalled in 2009 with receivers being called in, Soetan moved to New York, where he now says he heads an oil exploration and energy trader firm called Blacksands Pacific Inc." (*Id.*) Finally, The Guardian published an article falsely stating that Mr. Brennerman was an "owner[] of BVI entities use[d] to hide [his] dealings in UK property and to take advantage of tax loopholes" "who borrowed £118 million from the Royal Bank of Scotland." (Ex. 3.)

32.     These statements, published by the Defendants, are defamatory per se because they falsely accuse Mr. Brennerman of using and exploiting an offshore trust and other questionable financial mechanisms to improperly conceal his ownership in certain real estate developments, evading taxes that otherwise would have been due on those real estate transactions, fleeing the United Kingdom to avoid repayment of a loan that he had allegedly taken from RBS in connection with the scheme, and setting up Blacksands Pacific as a sham company. In doing so, the Defendants created the false and defamatory impression that Mr.

Brennerman is a dishonest criminal and con man unfit for his profession and business, and that Blacksands Pacific is a sham company run by a dishonest criminal.

33. These statements, published by the Defendants, are false in that Mr. Brennerman never had an ownership interest in or borrowed money from RBS with respect to the subject properties and, consequently, made no efforts to conceal or to avoid taxes with respect to such non-existent ownership interests and did not flee the United Kingdom to avoid repaying a loan that he had never borrowed. They are also false in that Blacksands Pacific is not a sham company run by a dishonest criminal.

34. The Defendants disseminated and published these false and defamatory statements on the internet in a manner that achieved widespread exposure to a global internet audience, including to individuals in Delaware.

35. The Defendants published these false and defamatory statements in reckless disregard of publicly-available information and relevant financial documents to which they obtained access prior to publication. Considering the availability of this information, the Defendants entertained serious doubts as to the truth of the publication or had a high degree of awareness of its probable falsity. Thus, the Defendants acted with actual malice, either because they knew the statements were false prior to publication or because they published the statements in reckless disregard for their truth or falsity. ICIJ's reckless disregard for the truth of the statements it published is further demonstrated by the fact that the statements were not corrected or removed from its website after Mr. Brennerman informed ICIJ of the falsehoods in its articles.

36. The Defendants are each responsible for the false statements of the authors and editors of the articles under the doctrine of respondeat superior.

13

37.     The foregoing statements published by the Defendants amount to defamation per se under Delaware common law because the defamatory statements would tend to harm, and indeed have harmed, the Plaintiffs in their trade, business, and profession.

38.     As a result of the false and defamatory statements published by the Defendants, Plaintiffs' reputations have been impugned.

39.     As a result of the false and defamatory statements published by the Defendants, Plaintiffs' relationships with current and potential clients, investors, and partners have been undermined.

40.     As a result of the false and defamatory statements published by the Defendants, confidence in Plaintiffs' business has been undermined.

41.     As a result of the false and defamatory statements published by the Defendants, Plaintiffs' revenue sources have been adversely affected.

42.     As a result of the false and defamatory statements published by the Defendants, Plaintiffs have been forced to make an expenditure of money to remedy the defamation.

43.     In view of the foregoing, Plaintiffs are entitled to actual, presumed, and punitive damages in an amount to be specifically determined at trial.

## PUNITIVE DAMAGES

44.     The actions or omissions of Defendants set forth in this Complaint demonstrate malice, egregious defamation, and insult.  Such actions or omissions by Defendants were undertaken with either: (1) maliciousness, spite, ill will, vengeance, or deliberate intent to harm the Plaintiffs; or (2) reckless disregard of the falsity of the speech and its effects on the Plaintiffs.  Accordingly, the Plaintiffs request an award of punitive damages and attorneys' fees beyond and in excess of those damages necessary to compensate them for injuries resulting from Defendants' conduct.

14

## PRAYER FOR RELIEF

45.     Plaintiffs pray that this Court provide the following relief:

(a)     Compensatory and consequential damages for detraction from good name and reputation and for injuries to Plaintiffs' professional standing;

(b)     Punitive damages to punish Defendants' reprehensible conduct and to deter its future occurrence;

(c)     Costs and fees incurred in the prosecution of this action; and

(d)     Further relief as this Court shall deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

SEITZ, VAN OGTROP & GREEN, P.A.

*/s/ James S. Green, Sr.*
JAMES S. GREEN, SR. (DE0481)
JARED T. GREEN (DE5179)
222 Delaware Avenue, Suite 1500
P. O. Box 68
Wilmington, DE  19899
(302) 888-0600
Fax:  (302) 888-0606
Email: jgreen@svglaw.com
        jtgreen@svglaw.com

*Attorneys for Plaintiffs Raheem Jefferson*
*Brennerman and Blacksands Pacific Energy*
*Corporation, Inc.*

OF COUNSEL:

KIRKLAND & ELLIS LLP
Thomas A. Clare, P.C.
Megan L. Meier
655 Fifteenth Street, N.W. Suite 1200
Washington, D.C.  20005
(202) 879-5000

Dated:  March 28, 2014

15