**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

RAHEEM JEFFERSON BRENNERMAN )
and BLACKSANDS PACIFIC ENERGY )
CORPORATION, INC., )
          )
         Plaintiffs, )
          )
      v. )     Civ. No.  1:14-cv-00188-SLR-SRF
          )
GUARDIAN NEWS & MEDIA LIMITED, )
GUARDIAN NEWS & MEDIA LLC, and )
CENTER FOR PUBLIC INTEGRITY d/b/a )
*International Consortium of Investigative* )
*Journalists,* )
         Defendants. )

### REPORT AND RECOMMENDATION

### I.     INTRODUCTION

Plaintiffs Raheem Jefferson Brennerman ("Brennerman") and Blacksands Pacific Energy

Corporation, Inc. ("Blacksands") (collectively "Plaintiffs"), filed an action for defamation

against Defendants Guardian News & Media Limited d/b/a *The Guardian* ("Guardian Ltd.

(UK)") and Center for Public Integrity d/b/a *International Consortium of Investigative*

*Journalists* ("CPI") (collectively "Original Defendants"), which was removed to this court on the

basis of diversity jurisdiction.  Following removal, Plaintiffs filed the First Amended Complaint

(the "FAC"), adding Defendant Guardian News & Media, LLC ("Guardian LLC (US)") as a

defendant.  Presently before the court are:

1)  Plaintiffs' Motion to Remand to State Court ("Motion to Remand") (D.I. 17);

2)  Original Defendants' Cross Motion to Strike Plaintiffs' FAC or, in the alternative, to

    Deny Joinder ("Motion to Deny Joinder") (D.I. 20);

3) Original Defendants' Motion to Dismiss[1] (D.I. 22); and

4) Guardian LLC (US)'s Motion to Dismiss. (D.I. 25)

For the following reasons, I recommend that the court DENY Plaintiffs' Motion to Remand, GRANT Original Defendants' Motion to Deny Joinder, and GRANT Original Defendants' Motion to Dismiss. Guardian LLC (US)'s Motion to Dismiss is rendered moot, and the court will not address these arguments.

## II.   BACKGROUND

On November 26, 2012, Guardian Ltd. (UK) published two articles in the United Kingdom (the "U.K.") to its U.K. website as part of a series based on a global investigation into offshore tax havens. (D.I. 1, Ex. 1 at ¶ 1) The articles were titled: "*How Secret Offshore Firms Feed London's Property Boom*" and "*Revealed: The Real Identities Behind Britain's Secret Property Deals*." (*Id.*) On the same day, CPI published an article to its website titled: "*Who's Buying Britain? Probe Reveals Real Estate Speculators Hidden by Offshore Alchemy*." (*Id.*) Three Guardian Ltd. (UK) employees wrote all three articles in London. (D.I. 27 at ¶ 4; D.I. 29 at ¶ 4) The articles state that Brennerman used bank loans to buy properties in the U.K., that he was the beneficiary of an offshore trust related to the subject real estate investments, and that he moved to New York in 2009 where he works as a trader for Blacksands. (D.I. 1, Ex. 1 at ¶ 15) Blacksands, a Delaware corporation, was not mentioned anywhere else in the articles.[2] The

---

[1] Original Defendants bring the Motion to Dismiss based on lack of jurisdiction over the person and improper venue, failure to state a claim, or alternatively to dismiss under anti-SLAPP statutes and to stay discovery.

[2] In their opposition to Plaintiffs' Motion to Remand, Original Defendants also allege that Blacksands should be discounted from the jurisdictional analysis because it is a nominal party. (D.I. 23 at 2) The court need not reach the merits of this argument as the personal jurisdiction analysis is dispositive.

articles further state that property owners identified in the articles have been taking advantage of tax loopholes related to their U.K. properties. (*Id*. at ¶ 16)

On January 10, 2014, Plaintiffs filed a complaint in the Superior Court of the State of Delaware alleging, *inter alia*, that the articles were false and defamatory. (*Id.* at ¶ 1) On February 12, 2014, Original Defendants removed the action to this court. (D.I. 1) The parties filed three different stipulations extending the time to answer or respond, partially dependent upon whether Plaintiffs were going to file the FAC. (D.I. 5; D.I. 13; D.I. 14)

Plaintiffs filed the FAC on March 28, 2014 against Original Defendants, joining Guardian LLC (US) as a third defendant (collectively "Defendants").[3] (D.I. 16) Guardian LLC (US) is a wholly owned subsidiary of Guardian Ltd. (UK). (D.I. 27 at ¶ 2) Guardian LLC (US) hires journalists to report on stories in America for publication by Guardian Ltd. (UK) in the U.K. newspaper and on the U.K. website. (*Id.*) The Guardian website is published by Guardian Ltd. (UK), even though Guardian LLC (US) sometimes contributes to the articles. (*Id*. at ¶ 5) The authors of the articles in issue were employees of Guardian Ltd. (UK), and not the American company. (*Id*. at ¶¶ 3–4)

On April 15, 2014, Plaintiffs filed a Motion to Remand for lack of subject matter jurisdiction, asserting that their addition of Guardian LLC (US)—a Delaware corporation—to the FAC destroyed jurisdiction based on diversity of citizenship in that both Blacksands and Guardian LLC (US) are Delaware residents. (D.I. 17 at ¶ 6) Original Defendants oppose Plaintiffs' Motion to Remand, contending that Guardian LLC (US) was joined solely for the purpose of destroying diversity jurisdiction. (D.I. 21 at 2) Therefore, on May 2, 2014, Original

---

[3] The FAC was identical in all respects relevant to the pending motions except for the addition of Guardian LLC (US) as a defendant. (D.I. 1, Ex. 1; D.I. 16)

Defendants filed their Motion to Deny Joinder pursuant to 28 U.S.C. § 1447(e). (D.I. 20) They ask the court to strike the FAC—leaving the original complaint in its place—or to deny joinder of Guardian LLC (US) as a party to the FAC. (D.I. 21)

Original Defendants also filed a Motion to Dismiss in part for lack of personal jurisdiction. (D.I. 22) The same day, Guardian LLC (US) filed a separate Motion to Dismiss. (D.I. 25) The court will first turn to Plaintiffs' Motion to Remand. (D.I. 17)

## III. STANDARDS OF REVIEW

### A. Motion to Remand

A party may remove a case from state court to federal court under 28 U.S.C. § 1441 if the matter is one over which the federal court has original jurisdiction. If jurisdiction is based on diversity of citizenship, complete diversity must exist and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a). If jurisdiction no longer exists at any time after a case has been removed, the federal court shall remand the case back to state court. 28 U.S.C. § 1447(c).

When the addition of a non-diverse defendant destroys diversity jurisdiction, the district court will remand the case back to state court unless the removing defendant can show that the non-diverse party was fraudulently joined. *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992). The defendant bears a "heavy burden of persuasion" in asserting this allegation. *Id.* (quoting *Steel Valley Author v. Union Switch & Signal Div.*, 809 F.2d 1006, 1012 n. 6 (3d Cir. 1987)).

Fraudulent joinder occurs "'where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant....'" *Id.* (quoting *Boyer v. Snap-On Tools, Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991)). This entails a

finding that claims against the non-diverse defendant are "'wholly insubstantial and frivolous,'" and recovery is a legally impossibility. *In re Briscoe*, 448 F.3d 201, 218 (3d Cir. 2006) (quoting *Batoff*, 977 F.2d at 852); *see also Kallman v. Aronchick*, 981 F. Supp. 2d 372, 380 (E.D. Pa. 2013) (the court will only find fraudulent joinder where the plaintiff's clams are "wholly insubstantial and frivolous").

In making this determination, the district court must consider the plaintiff's complaint at the time of removal, assuming all factual allegations as true. *Batoff*, 977 F.2d at 851–2 (quoting *Steel Valley*, 809 F.2d at 1010). If a state court could find that the plaintiff's allegation is plausible, the district court must remand the case to state court. *Id.* On the other hand, if the district court does make a finding of fraudulent joinder, the court may deny joinder and retain jurisdiction. *See, e.g.*, *Roggio v. McElroy, Deutsch, Mulvaney & Carpenter*, 415 F. App'x 432, 433 (3d Cir. 2011) (denying a motion to remand where the court made a finding of fraudulent joinder).

The initial jurisdictional inquiry should be evaluated separately from a motion to dismiss. *Batoff*, 977 F.2d at 851. The court may not base the remand analysis on the merits of a claim asserted against a non-diverse defendant. *See id.* at 852 (finding that the district court "erred in converting its jurisdictional inquiry into a motion to dismiss"). Therefore, sufficient allegations concerning the defendant, which are supported by recent authority, will defeat diversity jurisdiction. *In re Briscoe*, 448 F.3d 201, 218–19 (3d Cir. 2006).

Courts in the Third Circuit have also recognized an equitable standard to determine whether a case should be remanded following joinder of a non-diverse defendant. *See, e.g.*, *Stewart v. Wal-Mart Distrib. Ctr.*, Civil Action No. 12-4958, 2013 WL 1482217, at *2 (E.D. Pa. Apr. 11, 2010); *Cnty. of Northampton v. RAM Const. Servs. of Cleveland, LLC,* Civil Action No.

12-5958, 2013 WL 878887, at *3 (E.D. Pa. Mar.11, 2013). Under this flexible approach, the

court conducts an inquiry into the *Hensgens* factors, a test arising from the Fifth Circuit. *See*

*Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). The *Hensgens* factors include:

1) Whether plaintiff's purpose in seeking to add a new, non-diverse defendant is solely to defeat federal jurisdiction;

2) Whether the plaintiff was dilatory in seeking to add the new defendant;

3) Whether the plaintiff will be injured if the motion is not allowed; and

4) Any other equitable factors.

*Id.*

The parties disagree as to whether fraudulent joinder or the *Hensgens* test is the correct

standard to apply in analyzing Plaintiffs' Motion to Remand. Original Defendants urge this

court to consider the *Hensgens* factors, while Plaintiffs argue for a more stringent fraudulent

joinder analysis. (D.I. 21 at 10; D.I. 41 at 5) The Third Circuit has not yet resolved this dispute,

although it has recognized the *Hensgens* factors when ruling on a motion to permit joinder of

non-diverse defendants. *See Hayden v. Westfield Ins. Co.,* 586 F. App'x 835, 840 (3d Cir. 2014).

District courts within the Third Circuit have distinguished between situations where the court has

*discretion to permit joinder*, and those like this, wherein the *complaint is amended as a matter of*

*right. See, e.g., O'Keefe v. Hess Corp.*, Civil Action No. 10-2598 (WJM), 2010 WL 3522088, at

*8 (D.N.J. Sept. 1, 2010), *report and recommendation adopted*, 2010 WL 4102848 (D.N.J. Oct.

15, 2010) (finding that defendants properly focused their argument on fraudulent joinder where

the complaint was amended as a matter of right).[4] Those courts have determined that when a pleading is amended as a matter of right, the court does not consider the merits of the amendment; rather, the argument should be focused solely on fraudulent joinder. *See, e.g.*, *O'Keefe*, 2010 WL 3522088, at *8. Original Defendants assert that there is precedent in the District of Delaware that applies the *Hensgens* factors over the fraudulent joinder analysis in this type of situation. (D.I. 43 at 3) However, Original Defendants broadly extend the holding of *Transamerica Corp. v. Reliance Ins. Co. of Illinois*, as Judge Robinson did not make a specific finding as to the applicability of one test over the other where there was no evidence that the plaintiffs were attempting to circumvent jurisdiction beyond the moving defendants' unsupported allegations. 884 F. Supp. 133, 137–39 (D. Del. 1995).

This court need not resolve the dispute as to which test to apply to Plaintiffs' Motion to Remand, as the result limited to the facts of this case would be the same under either analysis. *See Neuner v. Samost*, Civil No. 12-CV-2420 (RMB-AMD), 2012 WL 5944143, at *2 n. 2 (D.N.J. Nov. 26, 2012) ("In this Court's view, because the fraudulent joinder analysis permeates the ordinary four factor analysis, it is difficult to imagine a scenario where a finding of fraudulent joinder would not compel dismissal under section 1447(e).").

## B. Personal Jurisdiction

---

[4] *See also City of Perth Amboy v. Safeco Ins. Co. of Am.*, 539 F. Supp. 2d 742, 754 n. 2 (D.N.J. 2008) ("Had Plaintiff simply filed an amended pleading including claims against [newly joined Defendant], the appropriate analysis would be one of fraudulent joinder"); *Confessore v. AGCO Corp.*, Civ. No. 14-7262 (FLW), 2015 WL 4430472, at *4 n. 4 (D.N.J. July 20, 2015) (applying the *Hensgens* factors but noting that the fraudulent joinder analysis "applies in circumstances when a party has already been joined to an action"); *Montalvo v. John Doe I*, Civ. No. 10-2617, 2010 WL 3928536, at *2–3 (E.D. Pa. Oct. 5, 2010) (applying a fraudulent joinder approach to a joinder analysis and the *Hensgens* factors to a ruling on a motion to amend the pleadings).

Once subject matter jurisdiction is determined, the court considers whether to dismiss the

suit for lack of personal jurisdiction pursuant to the Federal Rules of Civil Procedure. Fed. R.

Civ. P. 12(b)(2). A "federal district court may assert personal jurisdiction over a nonresident of

the state in which the court sits to the extent authorized by the law of that state." *Bell Helicopter

Textron, Inc. v. C & C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 403 (D. Del. 2002) (citing

Fed. R. Civ. P. 4(e)). Accordingly, personal jurisdiction may be found over nonresidents

pursuant to the Delaware long-arm statute. *Id.* (citing Del. Code Ann. tit. 10, § 3104(c) (West

2008)). The exercise of jurisdiction must also comport with the requirements of Due Process.

*Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). However, if there is no basis for

jurisdiction under any prong of the long-arm statute, the court need not consider the

Constitutional analysis.

Because Original Defendants raise respective jurisdictional defenses, Plaintiffs bear the

burden of establishing general or specific jurisdiction, which they may show through affidavits

or other evidence. *Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661, 670 (D. Del 2008).

Specific jurisdiction exists where the cause of action arises from the defendant's activities in the

forum, and general jurisdiction arises from the defendant's continuous contact with the forum.

*Id.*

## IV.     DISCUSSION

Before this court addresses the case dispositive motions, the court must determine

whether it has jurisdiction to do so. *See Minker v. HSB Indus. Risk Insurers*, No. Civ.A. 99-494

(SLR), 2000 WL 291542, at *2 (D. Del. Mar. 14, 2000). In turning to the jurisdictional analysis,

for the reasons set forth below, the court recommends that Plaintiffs' Motion to Remand be

denied. Because Guardian LLC (US) is a fraudulently joined defendant, and the *Hensgens*

8

factors favor dismissal of the non-diverse defendant, this court retains jurisdiction to consider the motions to dismiss.

## A. Diversity of the Parties at the Time of Removal

It is undisputed that the parties were diverse at the time of removal. Diversity existed, as Plaintiff Brennerman was a resident of Nevada, (D.I. I, Ex. 1 at ¶ 6), Plaintiff Blacksands is considered a resident of Delaware and California, (*Id.* at ¶ 7), Defendant CPI is a resident of Washington, D.C., (*Id.* at ¶ 8), and Guardian Ltd. (UK) is a resident of the U.K.   (D.I. 21 at 5) 28 U.S.C. 1332(c).

Having determined that the parties were of diverse citizenship at the outset, this court must next assess whether the addition of Guardian LLC (US) would defeat diversity and, if it would, whether Guardian LLC (US) should be dismissed under 28 U.S.C. § 1447(e), or whether the case should be remanded to state court.

## B. Fraudulent Joinder

This court finds that Plaintiffs fraudulently joined Guardian LLC (US)—a Delaware resident—to this action for the sole purpose of destroying diversity jurisdiction. For the court to deny Plaintiffs' Motion to Remand, Original Defendants must establish that there is "no reasonable basis in fact" or "colorable ground" to support the claim against Guardian LLC (US), or no good faith intention to prosecute the action against Guardian LLC (US). *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985). The court is aware that "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Steel Valley v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d. Cir. 1987). However, the court finds Plaintiffs' claims against Guardian LLC (US) to be "wholly insubstantial and frivolous." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992).

Therefore, the court recommends granting Original Defendants' Motion to Deny Joinder and denying Plaintiffs' Motion for Remand.

Plaintiffs have provided no "reasonable basis" for their amendment and joinder of Defendant Guardian LLC (US) to the FAC. *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). Although it is not the court's role to determine the merits of Plaintiffs' defamation claim against Guardian LLC (US), *see Batoff*, 977 F.2d at 852, even if the court takes a "limited look outside the pleadings," as is authorized by the Third Circuit in analyzing a fraudulent joinder claim, there is no evidence to support Plaintiffs' allegations.[5] *In re Briscoe*, 448 F.3d 201, 219–20 (3d Cir. 2006).

Plaintiffs base their defamation claim against Guardian LLC (US) on the fact that the allegedly defamatory statements on Guardian Ltd. (UK)'s website could be accessed through Guardian LLC (US)'s website. (D.I. 41 at 8) They assert that they were not aware of this fact until after filing the initial complaint. (1/14/15 Tr. at 22) The dilatoriness of the joinder is a factor considered in the *Hensgens* analysis. More importantly, no legal claim arises from mere access through a link to an allegedly defamatory article published elsewhere. *See DiMeo v. Max*, 248 F. App'x 280, 282 (3d Cir. 2007) (finding that a defendant website owner was not a publisher where the defendant did not author the allegedly defamatory material on his website); *Neuner v. Samost*, Civil No. 12-CV-2420 (RMB-AMD), 2012 WL 5247773, at *2 (D.N.J. Oct.

---

[5] The Third Circuit has held that it is proper to look to more than just the pleadings to identify indicia of fraudulent joinder. *In re Briscoe*, 448 F.3d 201, 219–20 (3d Cir. 2006). However a district court must not step "from the threshold jurisdictional issue into a decision on the merits." *Id.* (quoting *Boyer*, 913 F.2d at 112). The district court must accept any well-pleaded allegations as true, and resolve uncertainty in the law governing the limitations bar in plaintiff's favor, however, it may be proper to conduct a "limited consideration of reliable evidence that the defendant may proffer to support the removal. Such evidence may be found…in other relevant matters that are properly subject to judicial notice." *Id.* This limited look outside the pleadings does not constitute an improper decision on the merits. *Id.*

24, 2012) (defendant was fraudulently joined were plaintiff failed to articulate a legal theory

giving rise to liability on the facts alleged).[6]   Therefore, Plaintiffs have no reasonable basis to

believe that Guardian LLC (US) is amendable to suit, and the court finds that Defendant

Guardian LLC (US) was fraudulently joined. *See Brown v. Jevic*, 575 F.3d 322, 327 (3d Cir.

2009) (defendant was fraudulently joined where plaintiff had no reasonable basis to believe

defendant was amenable to suit after defendant filed for bankruptcy).[7]

### C. *Hensgens* Factors

The Third Circuit has also applied the *Hensgens* factors when ruling on a motion to

remand following a post removal amendment. *See Hayden v. Westfield Ins. Co.*, 586 F. App'x

835, 840–41 (3d Cir. 2014) (the court did not address the correct analytical approach to §

1447(e), but it applied the *Hensgens* factors when faced with a motion to amend a pleading

adding a new non-diverse defendant after removal); *see also City of Perth Amboy v. Safeco Ins.

Co. of Am.*, 539 F. Supp. 2d 742, 746 (D.N.J. 2008) (noting that district courts within the Third

Circuit have adopted the *Hensgens* approach).   Even if fraudulent joinder is treated as only one

relevant factor to consider among the four § 1447(e) factors, dismissal of Guardian LLC (US) is

warranted in this instance.

In *Hensgens*, the court instructed that when "faced with an amended pleading naming a

new nondiverse defendant in a removed case," the court should determine (1) the extent to which

the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been

---

[6] *See also* 47 U.S.C.A § 230(c)(1), (e)(3) ("No provider…of an interactive computer service shall be treated as the publisher…of any information provided by another information content provider…No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.").

[7] The court noted that although the issue on appeal was not plaintiff's fraudulent joinder of a non-diverse defendant, the court still applied the fraudulent joinder principles laid out in *In re Briscoe*, 448 F.3d 201 (3d Cir. 2006) to the case. *Brown*, 575 F.3d at 327.

dilatory in asking for amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed; and (4) any other factors bearing on the equities. *Hayden*, 586 F. App'x at 840–41 (quoting *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)). The court will examine each of these factors in turn. For the reasons discussed below, this court finds that the *Hensgens* factors weigh in favor of dismissing the non-diverse defendant and retaining jurisdiction pursuant to 28 U.S.C. § 1447(e).

### 1. Purpose of the amendment

Given this court's finding as to fraudulent joinder, the sole purpose of the amendment appears to be intended to defeat federal jurisdiction. Original Defendants contend that timing alone "makes clear that [Plaintiffs'] only purpose was to join Guardian LLC (US) to defeat diversity." (D.I. 21 at 11) They further assert that Plaintiffs have not alleged facts to support a plausible claim against Guardian LLC (US). (*Id.* at 13) As discussed under the fraudulent joinder standard *supra*, Plaintiffs have not shown that there is a colorable claim against Guardian LLC (US). Even if the court does not inquire into the actual merits of Plaintiffs' claim, *see Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992), there is no legal basis to support Plaintiffs' claim of defamation against Guardian LLC (US).

The timing of the post removal joinder along with Plaintiffs' knowledge of the non-diverse defendant at the time the suit was originally brought demonstrate a purpose to destroy diversity. *See Salamone v. Carter's Retail, Inc.*, Civil Action No. 09-5856 (GEB), 2010 WL 762192, at *2 (D.N.J. Mar. 5, 2010). In *Salamone*, the court found that because the plaintiff knew of the defendant's alleged wrongful acts before filing her complaint, but did not seek to join the defendant's claim until after the case was removed to federal court, that the evidence weighed against allowing the amendment. *Id.* Conversely, in *Castle Cheese, Inc. v. Blue Valley*

*Foods, Inc.*, the court did not find the plaintiff's reasons for adding the non-diverse defendant to be "invidious" when there was no practical reason to name the non-diverse defendant at the time of the initial filing. Civil Action No. 08-1158, 2008 WL 4890851, at *3 (W.D. Pa. Nov. 12, 2008).

As in *Salamone*, Plaintiffs in the instant case were aware of Guardian LLC (US) at the time the original complaint was filed. *See Salamone*, 2010 WL 762192, at *2. In fact, Guardian LLC (US) is identified in the original complaint. (D.I. 1, Ex. 1 at ¶ 9) Plaintiffs contend that they did not know one could access the allegedly defamatory remarks through Guardian LLC (US)'s website until after the case was removed. (1/14/15 Tr. at 22:1–7) However, referencing the entity in the initial complaint indicates Plaintiffs' knowledge of Guardian LLC (US). Therefore, it follows that Plaintiffs were on notice of some connection between the two Guardian entities, but they made an election not to sue the U.S. entity at that time. Moreover, Plaintiffs' claimed reason for failure to pursue a potential claim against the known party in this instance is late discovery of its alleged involvement in the claims, not that it would have been impractical to bring a claim against it sooner. *C.f. Castle Cheese*, 2008 WL 4890851, at *3. Plaintiffs' explanation does not support a showing of a "newly discovered" fact that they could not have known at the time of the original filing, had they accessed the Guardian LLC (US) website at that time. Accordingly, this factor weighs in favor of dismissing Guardian LLC (US) and denying the Motion to Remand.

## 2. Whether plaintiffs have been dilatory in asking for amendment

The court finds that Plaintiffs have been dilatory in making their amendment. Dilatory conduct under the *Hensgens* analysis takes into consideration the length and nature of the delay. *City of Perth Amboy v. Safeco Ins. Co. of Am.*, 539 F. Supp. 2d 742, 748 (D.N.J. 2008). In

*Salamone*, the court held that the plaintiff's actions were dilatory after he waited thirty-seven days after removal to file a motion to amend the complaint. 2010 WL 762192, at *2. The *Salmone* court relied on the fact that the plaintiff had been aware of the defendants' acts prior to the original filing of the first complaint. *Id.* Additionally, in *Hayden v. Westfield Ins. Co.*, the Third Circuit denied joinder where the motion came after the close of discovery and briefing of dispositive motions. 586 F. App'x 835, 841 (3d Cir. 2014). On the other hand, in *City of Perth Amboy v. Safeco Ins. Co. of Am.*, the court found no delay where discovery had not yet occurred in the case. 539 F. Supp. 2d at 754. There, the court emphasized that the passage of time alone did not indicate undue delay. *Id.* Therefore, filing the motion to amend sixteen days after the defendant filed an answer and counterclaims was not dilatory. *Id.*

The original complaint in this case was filed on January 10, 2014, and the Notice of Removal was filed on February 12, 2014. (D.I. 1) The parties stipulated to extend time for Original Defendants to respond to the complaint until March 17, 2014 and March 24, 2014, respectively. (D.I. 5; D.I. 13) On March 21, 2014, the parties filed another stipulation providing that Original Defendants would have until May 2, 2014 to respond to the FAC if Plaintiffs chose to file one. (D.I. 14) On March 28, 2014, Plaintiffs filed the FAC. (D.I. 16)

Notwithstanding stipulations to extend the deadlines, Plaintiffs filed the FAC seventy-seven days after the initial complaint, and forty-five days after this case was removed. (D.I. 5; D.I. 12) Like *Salamone*, Plaintiffs, here, were aware of Guardian LLC (US)'s involvement prior to removal, as it was mentioned in the initial complaint. 2010 WL 762192, at *2; (D.I. 1, Ex. 1 at ¶ 9) Although the passage of time alone does not indicate undue delay, there is no reason why Plaintiffs could not have explored the potential claim prior to filing the FAC seventy-seven days after the original complaint. *See City of Perth Amboy v. Safeco Ins. Co. of Am.*, 539 F. Supp. 2d

14

742, 754 (D.N.J. 2008). Learning that the articles could be accessed through Guardian LLC (US)'s website is not a new fact sufficient to warrant amendment; rather, the fact existed whether or not Plaintiffs chose to investigate it. No new information led Plaintiffs to decide to pursue the claim; rather, Plaintiffs only decided to investigate Guardian LLC (US) after removal. Accordingly, this court concludes that Plaintiffs were dilatory in filing the FAC.

### 3. Whether plaintiffs will be significantly injured without amendment

Given this court's finding as to fraudulent joinder, Plaintiffs will not suffer injury by denying joinder of Guardian LLC (US) because Plaintiffs do not appear to have any claims against it. Original Defendants contend that the court should strike the FAC or deny joinder, as Plaintiffs will not be injured because (1) Plaintiffs have no viable claim against Guardian LLC (US), (2) Guardian LLC (US) is not a necessary party, and (3) joinder of the subsidiary company would not alter any potential recovery. (D.I. 21 at 16–17) Plaintiffs do not address this argument; however, courts have noted that a plaintiff may be injured by losing out on his or her choice of forum. *See, e.g., Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991).[8]

---

[8] While considering standing in the context of a motion to remand after removal, the Supreme Court held:

> Petitioner's injury is clear, for they have lost the right to sue in [state] court—the forum of their choice. This injury "fairly can be traced to the challenged action of defendants," since it directly results from NIH's removal of the case. And the injury is "likely to be redressed" if petitioners prevail on their claim because, if removal is found to have been improper under § 1442(a)(1), the federal courts will lose subject matter jurisdiction and the "case shall be remanded." Therefore, petitioners clearly have standing to challenge the removal.

*Id.* (citations omitted).

Given the court's conclusion as to fraudulent joinder, there can be no finding of significant injury here. *See Neuner v. Samost*, Civil No. 12-CV-2420, 2012 WL 5944143, at *3 (D.N.J. Nov. 26, 2012). Plaintiffs cannot suffer injury where the outcome of any potential claim or recovery is not affected by the addition of the non-diverse defendant. *Id.* Accordingly, this factor weighs in Original Defendants' favor.

### 4. Equitable factors

Lastly, it would be inequitable to permit Plaintiffs to defeat diversity jurisdiction by fraudulently joining Guardian LLC (US). *See id.* As discussed, *supra*, there is no reasonable explanation for why Plaintiffs did not allege defamation claims against Guardian LLC (US) prior to removal.[9] Therefore, equity favors denying joinder and the Motion to Remand. Having decided that the court retains subject matter jurisdiction over Original Defendants, the court will next turn to the Motions to Dismiss.

### D. Personal Jurisdiction

The originally named Defendants move to dismiss the action on threshold grounds of lack of personal jurisdiction over CPI and Guardian Ltd. (UK). (D.I. 22) CPI and Guardian Ltd. (UK) contend that Plaintiffs have not established jurisdiction under the Delaware long-arm statute or the Due Process Clause. (*Id.* at 2) Plaintiffs respond that the court has specific jurisdiction because Original Defendants directed the allegedly defamatory articles into Delaware, and the publications were a result of Original Defendants transacting and contracting in Delaware. (D.I. 48 at 2) Plaintiffs further allege that Original Defendants engaged in

---

[9] See *Jordan v. AlliedBarton Sec. Servs.*, where the court concluded that the fourth *Hensgens* factor weighed against amendment when the plaintiff chose not to name known defendants at the time of the first filing. Civ. No. 10-3011 (GEB), 2010 WL 4687934, at *5 (D.N.J. Nov. 9, 2010).

systematic contacts with Delaware by circulating the articles, advertising, soliciting donations, and deriving revenue in Delaware. (*Id.*)

The Delaware long-arm statute provides in relevant part that personal jurisdiction is proper over any nonresident who:

1) Transacts business or performs work or services in Delaware;

2) Contracts to supply services or things in Delaware;

3) Causes tortious injury in Delaware by an act or omission in Delaware; or

4) Causes tortious injury by an act or omission outside Delaware, if the person regularly does business, engages in persistent conduct, or derives substantial revenue from services, or things used or consumed in Delaware.

Del. Code Ann. tit. 10, § 3104(c) (West 2008).

In briefing, Plaintiffs explain that jurisdiction arises under the first three prongs of § 3104(c), which relate to specific jurisdiction. (D.I. 48 at 3) However, at oral argument, Plaintiffs conflated these points with the fourth factor, § 3104(c)(4), which is the general jurisdiction prong of the statute. (Tr. at 43–48)

Plaintiffs assert that the long-arm statute confers jurisdiction over both Guardian Ltd. (UK) and CPI because both transact their publishing businesses in Delaware, contract to supply content to Delaware residents, and caused tortious injury in Delaware by publishing allegedly defamatory articles in Delaware. (*Id.* at 3–14) Specifically, they allege Guardian Ltd. (UK) published the articles to Delaware residents, receives web traffic from the U.S., targets Delaware by having a Delaware webpage with Delaware specific articles, receives advertising revenue from Delaware residents, and offers a subscription service to U.S. residents. (*Id.* at 4–7) Guardian Ltd. (UK) also contracts to do business with its subsidiary, Guardian LLC (US), a

17

Delaware company. (*Id*. at 7–8) Plaintiffs further argue that CPI published allegedly defamatory articles to Delaware residents and that it solicits donations from them. (*Id*. at 9–11) At oral argument, Plaintiffs blended specific and general jurisdiction arguments under the relevant four prongs of § 3104(c). (Tr. at 43–48)

Original Defendants counter that Guardian Ltd. (UK) did not transact business in Delaware because publishing articles online in the U.K., regardless of global presence or readership, does not satisfy the long-arm statute or show that Guardian Ltd. (UK) "purposefully availed itself of the privileges and benefits of Delaware law" in connection with the particular articles. (D.I. 55 at 3–4) Similarly, Original Defendants assert that there is no "requisite nexus" between CPI's contact and the defamation claim so as to create personal jurisdiction. (*Id*. at 6–7)

Specific jurisdiction requires "a nexus between the cause of action and the conduct used as the basis for jurisdiction." *Parker v. Learn Skills Corp*., 530 F. Supp. 2d 661, 672 (D. Del. 2008). Plaintiffs' claims do not arise out of Guardian Ltd. (UK)'s operation of the subsidiary company in Delaware; rather, the articles were written and published by Guardian Ltd. (UK) in the U.K. There is nothing to indicate that the U.K. company performed work within the state of Delaware. *Cf. Kabbaj v. Simpson*, 547 F. App'x 84, 87 (3d Cir. 2013) (no systematic continuous contact between the defendant, who did business through a Delaware company, and Delaware). That the articles can be accessed through the Delaware subsidiary's website in Delaware does not mean that the U.K. company purposefully availed itself of doing business in Delaware. Similarly, CPI's publishing of articles to a global audience does not indicate that CPI transacted or performed work within the state of Delaware. To find otherwise would amount to broadly conferring jurisdiction in Delaware over any person who posts content on the internet in his or her home state or country, if such content is reviewed on the internet by a person in

Delaware. This notion conflicts with Due Process, and therefore cannot be the intention of the

Delaware long-arm statute. *See id.* at 88; *see also Kloth v. S. Christian Univ.*, 494 F. Supp. 2d

273, 280 (D. Del. 2007), *aff'd*, 320 F. App'x 113 (3d Cir. 2008) ("Such nationwide jurisdiction is

not consistent with personal jurisdiction case law."). As such, § 3104(c)(1) provides no basis for

personal jurisdiction.

      Additionally, the FAC does not allege an injury arising out of any contract between

Plaintiffs and Original Defendants; thus, Plaintiffs do not assert jurisdictional facts that satisfy

the nexus requirement for specific jurisdiction under § 3104(c)(2). *See Parker*, 530 F. Supp. 2d

at 672–73. When pressed on this issue at oral argument, Plaintiffs seemed to concede this point.

(Tr. at 44:16–23) Therefore, there is no personal jurisdiction under § 3104(c)(2) of the long-arm

statute.

      Likewise, there is no evidence that Original Defendants performed an act or omission in

the state of Delaware, as required by the third prong of the long-arm statute, when it is

undisputed that three journalists in London working for the U.K. company wrote the articles.

(D.I. 27 at ¶ 4; D.I. 29 at ¶ 4) *See Kabbaj*, 547 F. App'x at 88 (no jurisdiction under § 3104(c)(3)

when the defendant did not make the defamatory electronic postings while present in Delaware).

Therefore, the court finds that § 3104(c)(3) cannot provide a basis for personal jurisdiction.

      Plaintiffs' arguments are couched towards demonstrating general jurisdiction under §

3104(c)(4). When deciding questions of general jurisdiction, it is the "quality of commercial

activity that is relevant." *Kloth*, 494 F. Supp. 2d at 281. Although the companies may have

some Delaware readers, and they may make a small amount of revenue through advertising on

their webpages, the only real contact between Original Defendants and Delaware is that one can

view their webpages in the forum. (D.I. 31; D.I. 28) Nothing suggests that Guardian Ltd. (UK)

or CPI make regular sales, earn substantial revenue, or have continuous and systematic contacts with Delaware that would permit the exercise of general jurisdiction.[10]  *See Kabbaj*, 547 F. App'x at 87. (D.I. 31; D.I. 28) Therefore, there is no basis for subjecting Original Defendants, Guardian Ltd. (UK) and CPI, to personal jurisdiction of this court, whether specific or general, under the long-arm statute. As such, there is no need to conduct the constitutional analysis, and I recommend that Original Defendants' Motion to Dismiss be granted.[11]

## V.   CONCLUSION

Under both the fraudulent joinder standard and the *Hensgens* factors, the court is satisfied that Original Defendants have shown that joinder was fraudulent and inequitable, so the court retains subject matter jurisdiction over the case. However, the court finds that there is no personal jurisdiction over Original Defendants.

For the foregoing reasons, I recommend that the court DENY Plaintiffs' Motion to Remand and GRANT Original Defendants' Cross Motion to Deny Joinder. As such, Defendant

---

[10] Plaintiffs submit no substantive jurisdictional facts in their proffered declarations to counter the numerous facts averred in Original Defendants' declarations, which exhibit a lack of contact with the Delaware forum. Plaintiffs' declarations include screen shot images of the Guardian's and CPI's websites showing that the articles at issue can be accessed through those websites. (D.I. 42; D.I. 50) The images also depict Delaware related articles and indicate that a user could subscribe to content or donate to the entities through the websites. (D.I. 42; D.I. 50) However, the images do not substantiate the notion that Guardian Ltd. (UK) or CPI *regularly* conduct business, engage in *persistent* conduct, or derive *substantial* revenue from services in Delaware as required by § 3104(c)(4). The images show at best that it is possible for one to see some Delaware related content on those websites. Additionally, the images do not rebut Original Defendants' assertions that they do not directly target the Delaware market. (D.I. 32; D.I. 28) Further, although the images show that one can donate or subscribe through these websites, Plaintiffs do not contradict Original Defendants' evidence that those donations and subscriptions in Delaware are *de minimis*, if present at all. (D.I. 32; D.I. 28).

[11] Because there is adequate grounds for dismissing Guardian LLC (US) based on fraudulent or inequitable joinder, and there is no personal jurisdiction over the remaining Defendants, there is no need to address additional grounds raised by Defendants in support of dismissal.

Guardian LLC (US) should be DISMISSED.  Furthermore, Guardian Ltd. (UK) and CPI's

Motion to Dismiss should be GRANTED for lack of personal jurisdiction.  Guardian LLC (US)'s

Motion to Dismiss is moot.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b)(2).  The objections and responses to the objections are limited to ten (10)

pages each. The failure of a party to object to legal conclusions may result in the loss of the right

to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x. 924, 925 n.1

(3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated: December **29** , 2015

Sherry R. Fallon
United States Magistrate Judge